**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,        ) | |
|                           Plaintiff,        ) | |
|                                                ) | No.  CR 13-709-TUC-CKJ |
| vs.                                           ) | |
|                                                ) | |
| Manuel R. Trujillo,                    ) | ORDER |
|                           Defendant.    ) | |

Pending before the Court are the Motions to Search Records Clerical Error of Detainer (Doc. 67, 68) filed by Defendant Manuel R. Trujillo ("Trujillo").  Trujillo requests the Court search its records for any detainers.  The Court will grant the request to the extent discussed herein.

*Motions to Search Records Clerical Error of Detainer* (Doc. 67, 68)

Trujillo was arrested in this case on March 30, 2013, and ordered released on conditions on April 3, 2013.  A Writ of Habeas Corpus ad Prosequendum ("Writ") was issued on July 10, 2013, directing the Warden, Pima County Detention Center, to produce Trujillo to the United States Marshal Service, who was directed to maintain Trujillo "within the jurisdiction of this Court pending the satisfaction of this writ or further orders of the Court, thereupon to be returned to the facility listed above unless otherwise ordered by the Court." Writ (Doc. 42).[1]

---

[1] A July 1, 2013, Writ was also issued, but the record indicates there was insufficient time to secure Trujillo's presence for a scheduled hearing, so a new Writ was issued.

The United States Marshal Service ("USMS") has advised the Court that, on October 22, 2013, i.e., following Trujillo's sentencing in this case, Trujillo was returned to Arizona custody from the custody of the USMS before completing his federal sentence. The Court recognizes Trujillo previously filed a Motion for Concurrent Sentence (Doc. 65), which the Court denied on April 1, 2025 (Doc. 66). In that order, the Court stated:

> Trujillo was committed to the custody of the Bureau of Prisons ("BOP") for a 41 month term, with credit for time served, to be followed by a 36 months supervised release on October 16, 2013. There is nothing in the docket to indicate Trujillo has not been released from this case. Indeed, the BOP Inmate Locator found 0 results to match Manuel R. Trujillo.

April 1, 2025, Order (Doc. 66, p. 1). As the Court previously determined there was "nothing in the docket to indicate Trujillo has not been released from this case[,]" April 1, 2025, Order (Doc. 66, p. 1), the Court will *sua sponte* reconsider Trujillo's Motion for Concurrent Sentence (Doc. 65).

In his Motions to Search Records Clerical Error of Detainer, Trujillo also asserts he was not properly notified of the lodging of a detainer against him. The Interstate Agreement on Detainers Act ("IAD") does not specifically require a prisoner to be served with notice of a detainer from a requesting jurisdiction. Rather, the IAD states:

> (c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

18 U.S.C.A. § App. 2 § 2, Art. III(c). In other words, under the IAD, a state official was responsible for notifying Trujillo of the source and contents of any detainer lodged against him.

However, the Arizona rule cited by Trujillo states:

> (2) Detainer. No later than 30 days after a detainer is filed against a defendant incarcerated in Arizona, the prosecuting agency that is prosecuting the charge that resulted in the detainer must inform the defendant about the detainer and about the defendant's right to request its final disposition under (b)(1).

Ariz.R.Crim.P. 8.3(b). But, "'the activities of federal [authorities] are shielded by the Supremacy Clause from direct state regulation unless Congress provides "clear and

1  unambiguous" authorization for such regulation.'" *Boeing Co. v. Movassaghi*, 768 F.3d 832, 840 (9th Cir. 2014), *quoting Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988). Indeed, the United States can only be sued when Congress has consented to suit. *See e.g.*, *United States v. Navajo Nation*, [537 U.S. 488, 502] (2003) (cleaned up) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

In other words, unless Congress authorizes compliance with or "consents" to a state procedural rule, federal authorities are not bound by such state regulation. The United States, therefore, need not comply with Ariz.R.Crim.P. 8.3(b) unless it so consents. The Court has found no authority requiring the federal government to comply with state procedural requirements as they relate to the IAD. *See e.g. United States v. Mauro*, 436 U.S. 340, 344 (1978) (stating the United States must comply with Speedy Trial requirements of IAD if requested by prisoner, but did not require United States to provide notice of detainer to prisoner); *Fex v. Michigan*, 507 U.S. 43, 50-51 (1993) (in addressing Art. III(b), construing the IAD to avoid holding a receiving State responsible for a sending State's negligence); *United States v. Lualemaga*, 280 F.3d 1260, 1263–65 (9th Cir. 2002). ("A violation of the notice requirement by the sending State is not a circumstance in which the IAD calls for dismissal of an indictment."); *United States v. Pena–Corea*, 165 F.3d 819, 821–22 (11th Cir.1999) (per curiam) (holding the United States should not be responsible for a sending State's negligent violation of the IAD notice requirement).

The alleged violation of Ariz.R.Crim.P. 8.3(c), therefore, is not a violation by the United States in this case. Further, other than termination of the detainer if wrongfully issued, Trujillo does not specify what he seeks as a remedy for this alleged violation. However, as the IAD only provides for a prisoner to request any *untried* indictment, information, or complaint be *brought to trial* within one hundred and eighty days after a prisoner requests final disposition of the matter from the appropriate jurisdiction as set forth in the IAD, 18 U.S.C. § App. 2 § 2, Art. III(a), the provision does not appear to apply in this

case which is pending service of a sentence already imposed. In other words, the Court does not find it appropriate to grant any relief for the alleged violation of Ariz.R.Crim.P. 8.3(c).

*Reconsideration of Motion for Concurrent Sentence* (Doc. 65)

As previously discussed, Trujillo has not completed his federal sentence. Further, Trujillo asserts his state sentence was ordered to run concurrently to his federal sentence:

> IT IS FURTHER ORDERED that the sentence imposed herein on April 22, 2014, shall run concurrent with the sentence imposed in the defendant's Federal matter, cause number CR 13-00709-001-TUC-CKJ.

Attachment (Doc. 65-1). In its prior Order, the Court recognized state courts are not constitutionally empowered to control punishment for federal crimes. *Taylor v. Sawyer*, 284 F.3d 1143, 1151 (9th Cir. 2002), *abrogated on other grounds*; *Del Guzzi v. United States*, 980 F.2d 1269, 1270 (9th Cir. 1992). Further, generally speaking, "the first sovereign to arrest an offender has priority of jurisdiction for purposes of trial, sentencing, and incarceration until that priority is relinquished by, for example, bail release, dismissal of the state charges, parole release, or expiration of the sentence." *Cozine v. Crabtree*, 15 F. Supp. 2d 997, 1017 (D. Or. 1998); *see also United States v. Garrett*, 253 F.3d 443, 450 (9th Cir. 2001) (federal government is not required "to writ a defendant out of state custody and bring him before the federal district court for his revocation hearing . . . [which] could prove extremely burdensome"). Indeed, "a person who has violated the criminal statutes of both the Federal and State Government may not complain of the order in which he is tried or *punished* for such offenses." *Gunton v. Squier*, 185 F.2d 470, 471 (9th Cir. 1950), *emphasis added*. Arizona, therefore, maintains priority of jurisdiction over Trujillo at this time.

As there is no basis for this Court obtain custody of Trujillo until his state sentence is complete, Trujillo requests this Court to modify the sentence imposed by this Court. The Court generally has "'inherent authority' to decide motions for reconsideration or rehearing of orders in criminal proceedings, even when there is no statute authorizing such motions." *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999). However, 18

U.S.C. § 3582(c) expressly limits the inherent authority of district courts to reconsider criminal sentences it has imposed. *Id.* at 1028; *United States v. Aguirre*, 214 F.3d 1122, 1124 (9th Cir. 2000), *cert. denied* 531 U.S. 970 (2000); *see also United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014) (noting that through section 3582(c) Congress "abrogated this common-law practice in the sentencing context"), *cert. denied*, 135 S. Ct. 1442 (2015).

Indeed, section 3582(c) provides that a district court generally "may not modify a term of imprisonment once it is imposed." *See United States v. Tadio*, 663 F.3d 1042, 1046 (9th Cir. 2011). However, the statute also provides three exceptions to this general rule. See 18 U.S.C. § 3582(c). The statute permits defendants whose USSG sentencing range has been lowered by retroactive amendment, *Dillon v. United States*, 560 U.S. 817, 819-22 (2011), and defendants who show extraordinary and compelling reasons (i.e., compassionate release), *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021), to move for a sentence reduction. Additionally, the statute permits modification "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See* Section 3582(c)(1)(B). Rule 35 provides two avenues for modification: (i) the district court may, "[w]ithin 14 days after sentencing, . . . correct a sentence that resulted from arithmetical, technical, or other clear error[,]" or (ii) "upon the government's motion" the district court may reduce the sentence if the defendant provided "substantial assistance in investigating or prosecuting another person." Fed.R.Crim.P. 35(a)-(b). The exceptions are not applicable in this case.

Although the Court's inherent authority is restricted by statute, the Court will briefly address Trujillo's sentence. During the sentencing proceeding in this case, the Court recognized the United States Sentencing Guideline range did not take into account the serious offenses Trujillo was charged with while on release (i.e., the state charges). Although it was within the "Court's discretion to order that Trujillo's sentence run consecutively to his anticipated state sentence[,]" *Setser v. United States*, 566 U.S. 231, 244–45 (2012), the Court chose not to do so. Indeed, the Court was aware that "[m]ultiple terms of imprisonment

imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584. The Court chose to not order the federal sentence be concurrent with the forthcoming state sentence.

The Court finds no basis to modify the sentence imposed in this case. The Court will confirm the denial of the Motion for Concurrent Sentences (Doc. 65).

Accordingly, IT IS ORDERED:

1. The Motions to Search Records Clerical Error of Detainer (Docs. 67, 68) are GRANTED to the extent discussed herein.

2. The April 1, 2025, Order (Doc. 66) denying the Motion for Concurrent Sentence (Doc. 65) is CONFIRMED.

3. The Clerk of Court shall mail a copy of this Order to:

>   Manuel R. Trujillo ADC # 160838
>   ASP - La Plama CLS I
>   5501 N. La Palma Rd.
>   Eloy, AZ  85131

DATED this 8th day of July, 2025.

_____
Cindy K. Jorgenson
United States District Judge